OPINION
RAAS, C.J.:
Background and Procedural History
On March 9, 2008, the Appellant David Boehme and the Appellee Marissa Verdu-go became the parents of a son, Zakkery. For approximately the first 30 months of his life, Zakkery lived with Ms parents on the Tulalip Reservation. Appellant and Zakkery are both enrolled members of the Tulalip Tribes. Appellee is hot. Zak-kery’s parents separated, and since the separation, custody of Zakkery has been shared between the parties. Appellant still lives on the Tulalip Reservation and Appellee now lives in a nearby city. The custody arrangement has broken down and on July 7, 2014, Appellee filed a petition in Snohomish County Superior Court to enter a parenting plan and formalize both the custody arrangements and child support. On July 10, 2014, the Appellant filed a petition in the Tulalip Tribal Court seeking the resolution of the same issues. The Superior Court stayed its action until the Tribal Court ruled on whether the Appellant’s petition would be acted upon by the Tribal Court,
The Tribal Court held a hearing on August 12, 2014, and issued an order dismissing Appellant’s petition which read in its entirety:
David Boehme filed requesting this court to hear the custody case. Ms. Verdugo had previously filed for custody in Snohomish County Superior Court. There is concurrent jurisdiction by both courts for this case, and either can hear the case. Since it was filed first with Snohomish County, this court declines jurisdiction and this case is dismissed without prejudice.
Appellant timely appealed.
Standard of Review
The Tribal Court’s decision is a discretionary act of the Tribal Court which is reviewed under TTC 2.20.090(8):
A matter which is within the discretion of the Tribal Court shall be sustained if it is reflected in the record that the Tribal Court exercised its discretionary authority, applied the appropriate legal standard to the facts, and did not abuse its discretion. A matter committed to the discretion of the Tribal Court shall not be subject to the substituted judgment of the Court of Appeals.
While the Tribal Court’s decision could be seen as a conclusion of law, reviewable *312 de novo under TTC 2.20.090(4), the higher standard of TTC 2.20.090(8) will be used. The Tribal Court did not make Findings of Fact or Conclusions of Law.
Jurisdiction of the Tribal Court
Appellant properly invoked the jurisdiction of the Tribal Court under TTC 4.05.030(i )(a), (b), (d) and (3)[1] and under TTC 4.20.320(a)(1)(h), by filing his Petition for Child Custody.
The Tribal Court has concurrent jurisdiction with the Superior Court under TTC 4.05.030(3).
What This Case Is Not About
The Indian Child Welfare Act (ICWA) 25 U.S.C § 1901 et, seq., has no effect on this case. That Act excludes custody determinations which are part of dissolution actions between spouses from its provisions. 25 U.S.C. § 1903(1). Although the parties here have not been married to each other, there is no substantive difference between a custody proceeding involving an Indian child between married parents and one between unmarried parents.[2]
The Tulalip Code Regarding Custody Determinations
The Tulalip Domestic Relations Code, TTC 4.20, declares tribal purposes and policies regarding domestic relations including custody determinations:
Purpose and policy.
(1) The Tulalip Tribes values strong families and considers them to be the heart of the Tulalip community. Ensuring the safety and vitality of families promotes the health, safety, and welfare of the Tulalip community, and is essential to Tribal sovereignty and self-governance.
(2) This code shall be construed, together with the Tulalip Youth Code, the Tulalip Elder and Vulnerable Adult Protection Code, and other applicable Tulalip Tribal law, to promote the health, safety, and welfare of families, with special emphasis on protecting the best interests of children, elders, and vulnerable adults, within the jurisdiction of the Tulalip Tribes.
*313 (3) When interpreting this code, the Court shall take into consideration Tulalip Tribal laws, customs, and traditional practices.
(4) It shall be the policy of the Tulalip Tribes to promote the distinct and unique culture and heritage of the Tulalip Tribes, and to ensure that Native children have a meaningful opportunity to experience their culture on a permanent basis. All actions authorized by this code shall be taken with due consideration of this policy.
TTC 4.20.010 (emphases added).
TTC 4.20.020(1) of the Domestic Relations Code defines the “best interest of the child”:
(1) “Best interests of the child” means the preservation of the connection, or the creation of such a connection if one does not currently exist, between a Tulalip child and the child’s culture, family, and Tribe in a stable setting where the usual and special needs of that child may be met; where the child is secure and safe; where the child is emotionally, physically, socially, and spiritually healthy, and academically enriched.
In the Tulalip Youth Code, TTC 4.05, the Tulalip Tribes declare general policies regarding tribal children, as well as specific policies regarding Tulalip children in child welfare matters:
(1) Purpose.
(a) Indian children are the most valued resources of the Tulalip Tribes and constitute the future of the Tribes. The Indian family and home are important for the support of Indian children.
(b) Maintaining Indian children in an Indian home, and especially in the home of their natural parents, is a major purpose of this chapter. All actions authorized by this chapter are to be taken with this purpose as the first priority of the Tribes in enacting this chapter.
* * *
(2) Policy. In child welfare matters, it shall be the policy of the Tulalip Tribes to:
(a) Protect the best interests of Tulal-ip children by:
(i) Preventing the unwarranted breakup of Tulalip families;
(ii) Maintaining the connection of Tulalip children to their families, the Tribes, and the Tribal community, when appropriate; and
(in) Promoting the stability and security of the Tribes by establishing Tribal standards for appropriately handling situations involving youth-in-need-of-eare and other proceedings involving Tulalip children;
(b) Preserve the opportunity for Tu-lalip children to learn about their distinct and unique culture and heritage, and to become productive adult members of the Tulalip Tribal community, by ensuring that Tulal-ip children have a meaningful opportunity to experience their culture on a permanent basis;
(c) Encourage, guide, assist, and compel, if necessary, the parent, guardian, or custodian of a Tulalip child to provide a safe and nurturing environment for the child;
(d) Establish a judicial process whereby the Tribes is able to protect the health, welfare, and safety of Tulal-ip children, and other children within its jurisdiction, which process may include the provision of substitute care and supervision for children who are in need of such care, *314 and provision of services to parents seeking return of their children from substitute care;
(e) Ensure Tulalip children reside in an adequate physical and emotional environment that will protect and promote the health, safety, and development of all Tulalip children; provide child welfare services, in accordance with the traditions, law, and cultural values of the Tribes, to Tulalip children and their families.
TTC 4.05.010. These declarations of policy in the Youth Code inform the Trial Court’s deliberations regarding parenting plans under the Domestic Relations Code.
The Domestic Relations Code lists these factors to consider in determining child custody:
Relevant factors in awarding custody.
The Court shall determine custody in accordance with the best interests of the child. The Court shall consider all relevant factors including:
(1) The wishes of the child’s parent or parents as to visitation privileges;
(2) The wishes of the child as to his or her custodian and as to visitation privileges;
(3) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child’s best interests, including, but not limited to, the child’s extended family;
(4) The child’s adjustment to his or her home, school, and community;
(5) Availability of extended family to assist in the care and custody;
(6) The mental and physical health of all persons involved;
(7) Tribal affiliation of the parties and the child;
(8)The extent of the participation of the parties in Tribal cultural activities.
The Court shall not consider conduct of a proposed custodian that does not affect the welfare of the child.
Did the Tribal Court apply the proper standards under Tulalip law when it declined to assert its jurisdiction over this custody action?
The Tribal Court applied a mechanical test of ‘first in time is first in right’ in deciding to decline jurisdiction over Appellant’s petition to the exclusion of any other factors. In so doing, it failed to consider the policy of the Tulalip Tribes expressed in Youth Code: “Indian children are the most valued resources of the Tulal-ip Tribes and constitute the future of the Tribes. The Indian family and home are important for the support of Indian children.” TTC 4,05.010(l)(a).
The Youth Code and the Domestic Relations Code together list the mandatory considerations and the policies informing these considerations which the Tribal Court must review in deciding whether to assert or decline jurisdiction over this parental custody dispute. The Tribal Court did not apply the correct law to the facts and thus the Tribal Court abused its discretion. See Neff v. Port Susan Camping Club, 8 NICS App. 32 (Tulalip Tribal Ct. App.2007) (tribal court finding that the “trial record contains substantive evidence supporting” decision was not specific enough to support affirmance: case remanded).
Conclusion and Order
The decision of the Tribal Court to decline jurisdiction is vacated and this matter is remanded. On remand, the Tribal Court must consider whether the policies and declarations set out above will be better served by a determination in Tribal *315 Court or in the Snohomish Superior Court. If the Tribal Court concludes that the best interests of Zakkery and of the Tribes will be equally served in both courts, then it may decline jurisdiction in favor of the Superior Court.[3] In its decision, the Trial Court shall make such Findings of Fact and Conclusions of Law as are appropriate to support its decision and facilitate review by this Court should its decision be appealed.
The Tribal Court Clerk is directed to send copies of this decision to the parties, and to the Clerk and appropriate Judge of the Snohomish County Superior Court.
It is so ordered.

. 4.05.030 Tribal Court jurisdiction.
(1) The Tulalip Tribal Court shall have jurisdiction over any proceeding arising under this chapter and actions arising under the customs and traditions of the Tulalip Indian Tribal community affecting family or child welfare which involve:
(a) Any Indian youth who resides or is domiciled on the Tulalip Reservation;
(b) Any youth who is a member of, or is eligible for membership in, the Tulalip Tribes, regardless of the youth’s residence or domicile;
[[Image here]]
(d) Or whose parent is an enrolled member.
(2) The Tulalip Tribal Court shall have jurisdiction over adults in furtherance of its powers under this code. The Court may issue orders as are necessary for the welfare of youths and families.
(3) Whenever State, Federal, or other Tribal Courts have jurisdiction over any of the matters provided for in this code, the Court shall have concurrent jurisdiction over the same matters, to the extent consistent with Federal law.
(4) The limitations on jurisdiction contained in this section are not intended to reflecl the Tribes’ view as to the legally permissible limits of jurisdiction.

. While the parties cited in their written arguments language in the Tulalip Tribal Code regarding policies and legal principles related to the federal Indian Child Welfare Act, 25 U.S.C. §§ 1901, el s<?£/,, at oral argument the parties agreed that the ICWA was not applicable to this action, as this is not a “child custody proceeding” whereby custody of the child might be awarded to a non-parent third party.

. This decision is limited to matters where concurrent jurisdiction of the Tribal Court and another Court under TTC 4.05.030(3) are present.